# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| In re:<br><br>ILX RESORTS INCORPORATED, *et al.*<br><br>Debtor(s)<br><br>Address: 160 Portal Lane<br>Sedona, AZ 86336<br>Tax EIN: xx-xxx-4171<br><br>This filing applies to:<br><br>☒ ALL DEBTORS<br><br>☐ SPECIFIED DEBTORS | Chapter 11 Proceedings<br>Case No. 2:09-bk-03594-RTB<br>Case No. 2:09-bk-03595-RTB<br>Case No. 2:09-bk-03596-RTB<br>Case No. 2:09-bk-03598-RTB<br>Case No. 2:09-bk-03599-RTB<br>Case No. 2:09-bk-03600-RTB<br>Case No. 2:09-bk-03601-RTB<br>Case No. 2:09-bk-03603-RTB<br>Case No. 2:09-bk-03604-RTB<br>Case No. 2:09-bk-03605-RTB<br>Case No. 2:09-bk-03606-RTB<br>Case No. 2:09-bk-03608-RTB<br>Case No. 2:09-bk-03609-RTB<br>Case No. 2:09-bk-03610-RTB<br>Case No. 2:09-bk-03612-RTB<br>Case No. 2:09-bk-03617-RTB<br><br>Joint Administration under<br>Case No. 2:09-bk-03594-RTB<br><br>**JOINT PRETRIAL STATEMENT ON CONFIRMATION OF DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION AND TEXTRON FINANCIAL'S STAY RELIEF MOTION**<br><br>Hearing Date: November 10, 2009<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 703, Phoenix |
|---|---|

## I. STATEMENT OF THE CASE

This Joint Pretrial Statement is filed pursuant to court order and in conjunction with the evidentiary hearing set on confirmation of the Joint Debtors' First Amended Plan of Reorganization ("Plan") and Textron Financial Corporation's Stay Relief Motion ("Stay Relief Motion"). Textron Financial Corporation ("Textron Financial") and Pima County

filed Objections to Confirmation. Pima County has withdrawn its objection and voted in favor of the First Amended Plan. Concord Servicing Corporation ("Concord") filed a Statement of Position and Reservation of Rights regarding ILX's cure obligations and the absence of an agreement with the Debtor on that issue, and Resort Funding LLC filed a Reservation of Rights predicated on a final order effectuating its settlement agreement with the Debtor. Irwin Union ("Irwin Union") filed an objection to Textron Financial's Stay Relief Motion.

## II. AGREED FACTS

The factual and procedural background pertinent to this Joint Pretrial Statement may be summarized as follows:

### A. Procedural History and Debtors

1. Of the 27 companies that make up the ILX Entities (defined below), 16 have filed for protection under Chapter 11 of the Code, including ILX itself (collectively the "Debtors"). ILX-Bruno is among the Debtors.

2. On March 2, 2009, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

3. The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. Debtor ILX Resorts Incorporated ("ILX") is a public company traded on the NYSE Alternext exchange under the symbol "ILX." ILX is involved in the operation of upscale resorts located primarily in the western United States.

5. ILX's principal operations consist of acquiring, developing and operating the Resorts; marketing and selling vacation ownership interests; and providing purchase money financing to customers seeking to purchase such a vacation ownership interest. In addition, ILX through its subsidiaries receives revenues from the rental of unused and unsold time from units at its resorts; from the operating portion of homeowners'

dues from owners of vacation ownership interests; and from the food, beverage, and services sold at the resorts.

6. ILX and its numerous subsidiaries (collectively the "ILX Entities") work to accomplish the operational tasks set forth above. The subsidiaries conduct various aspects of the overall operations of the ILX Entities ranging from selling memberships in the resorts, managing the resorts' day to day needs, and operating food, beverage, and amenity concessions.

7. With the exception of ILX-Bruno, LLC ("ILX-Bruno"), all of the subsidiaries are wholly-owned by ILX, or one or more of its subsidiaries. ILX-Bruno is a venture with James Bruno Enterprises LLC, an entity unrelated to the ILX Entities, in which ILX holds an 85% interest, with James Bruno Enterprises LLC holding the remaining 15% interest.

**B.  Background**

8. ILX Resorts, in conjunction with its subsidiaries and affiliates (collectively the "Company"), is a developer, marketer and operator of timeshare resorts in the Western United States. The Company's principal operations consist of (i) acquiring, developing and operating timeshare resorts, marketed by the Company as vacation ownership resorts, (ii) marketing and selling vacation ownership interests in the timeshare resorts, which typically have entitled the buyers thereof to ownership of a fully-furnished unit for a one-week period on either an annual or an alternate year (i.e., biennial) basis ("Vacation Ownership Interests"), and (iii) providing purchase money financing to the buyers of Vacation Ownership Interests at its resorts. In addition, the Company receives revenues from the rental of the unused or unsold inventory of units at its vacation ownership resorts, from the operating portion of homeowner dues from owners of Vacation Ownership Interests, management fees, and from the sale of food, beverages and other services at such resorts.

9. The Company also developed and implemented a concept that it refers to as the "Varsity Clubs." This concept entails development of urban vacation ownership

properties near two universities. The first Varsity Club, VCA–South Bend, consisting of 86 units, is located approximately three miles from the University of Notre Dame in South Bend, Indiana. The second Varsity Club, VCA–Tucson, consisting of 60 units, is located approximately three miles from the University of Arizona in Tucson, Arizona.

10. Historically the Company had primarily marketed Vacation Ownership Interests in individual ILX resorts. Commencing in June 1998, the Company began marketing much of its inventory through membership interests in its proprietary branded Premiere Vacation Club. Premiere Vacation Club offers purchasers a deeded one-week membership interest that may be used at any time between certain specified dates at any one of the destinations included in Premiere Vacation Club, or may be split into multiple stays of shorter duration at any combination of such resorts. Vacation Ownership Interests in individual ILX resorts and in Premiere Vacation Club may be exchanged for stays at other resorts through the major national exchange networks in which ILX owners may participate, such as Interval International ("II") and Resort Condominiums International ("RCI"). The Premiere Vacation Club concept was intended to respond to perceived customer preferences for flexible use options (e.g., floating days, two-day uses and the ability to split a purchased membership interest), locations within convenient driving distances from major metropolitan areas, and other features (e.g., food and beverage discounts at participating ILX resorts).

11. ILX employs approximately 600 people. The majority of ILX's common stock is owned by employees, officers and directors, either through their participation in ILX's Employee Stock Ownership Plan, or, in some cases, direct holdings. Joseph P. Martori is the Chief Executive Officer of the company and has been Chairman of the Board of Directors since 1991. Nancy Stone has been the President and Chief Operating Officer of ILX since 1996, and has been Vice Chairman of the Board of Directors since March of 2007. Margaret Eardley is the Chief Financial Officer of ILX, and has served in that capacity since 2001.

## C. The Resorts and the Property

12. The Company's current portfolio of resorts consists of seven resorts in Arizona, one in Indiana, one in Colorado, one in San Carlos, Mexico, and land in the early development stages in Puerto Peñasco, Mexico and Sedona, Arizona (collectively, the "ILX Resorts"). Debtors also hold 2,241 weeks at the Carriage House in Las Vegas, Nevada, 174 weeks at the Scottsdale Camelback Resort in Scottsdale, Arizona, and 194 weeks at the Roundhouse Resort in Pinetop, Arizona.

13. More specifically, the Company is the owner of, certain real and personal property known as or located within, including without limitation (1) the Los Abrigados Resort and Spa in Sedona, Arizona, (2) The Inn at Los Abrigados in Sedona, Arizona, (3) Kohl's Ranch Lodge in Payson, Arizona, (4) Golden Eagle Resort in Estes Park, Colorado, (5) Varsity Clubs of America-South Bend Varsity Clubs of America Chapter in South Bend, Indiana, (6) Varsity Clubs of America-Tucson Varsity Clubs of America Chapter, (7) Sea of Cortez Premiere Vacation Club in San Carlos, Sonora, Mexico, (8) Premiere Vacation Club at the Roundhouse Resort in Pinetop, Arizona, (9) Carriage House in Las Vegas, Nevada, (10) Bell Rock Inn & Suites in Oak Creek, Arizona, (11) Celebrity House at Los Abrigados in Sedona, Arizona, (12) Scottsdale Camelback Resort in Scottsdale, Arizona, (13) Roundhouse Resort in Pinetop/Lakeside, Arizona, (14) Rancho Manana Resort in Cave Creek, Arizona, (15) undeveloped raw land in Sedona, Arizona, (16) consumer notes, (17) key man life insurance, (18) the cash reserve deposit with the merchant baker, (19) certain contracts and agreements, and (20) the proceeds, products, cash, and revenues, etc., of all of the above (the "Property") . The Property is described more particularly in documents to be entered into evidence at the Hearing.

## III. Textron Financial's Claim

Textron asserts a valid and perfected lien on all of the "property" described in its loan documents.

1. Textron Financial has provided at least three loans to the Company. These loans have been referred to as the "Receivables Loan" (referred to in the Plan as the

"Receivables Loan," Plan at 12:18-20), the "Construction Loan" (referred to in the Plan as the "Mortgage Loan," Plan at 11:10-13), and the "Land Loan" (referred to in the Plan as the "USFS Land Mortgage Loan" at 12:4-6). Textron asserts that the Property is cross collateralized under these Loans.

2. The "Receivables Loan" is evidenced by, among other things, the following: a written agreement entered into by the parties entitled "Second Amended and Restated Secured Line of Credit Lending and Security Agreement", together with all exhibits, as thereafter amended, restated or modified ("Receivables Loan Agreement"); a "Second Amended and Restate Secured Line of Credit Promissory Note ("Receivables Note"), originally dated as of April 30, 2004 in the original principal amount of $30,000,000, as it may have been amended or modified; by cross-collateralization, the Deeds of Trust on the Property and the amendments thereto; and the UCC Financing Statements and amendments thereto. The foregoing documents, among others and those related to them, are collectively referred to as the "Receivables Loan Documents."

3. The "Construction Loan" is evidenced by, among other things, the following: a written agreement entitled "Amended and Restated Secured Construction and Mortgage Loan and Security Agreement", together with all exhibits, as thereafter amended, restated or modified ("Construction Loan Agreement"); including a key man life insurance policy; a "Fifth Amended and Restated Mortgage Loan Promissory Note ("Construction Note"), originally dated as of February 28, 2008, in the original principal amount of $11,300,000, as it may have been amended or modified; the Deeds of Trust on the Property and the amendments thereto; and the UCC Financing Statements and amendments thereto. The foregoing documents, among others and those related to them, are collectively referred to as the "Construction Loan Documents."

4. The "Land Loan" is evidenced by, among other things, the following: a written agreement entitled "Loan and Security Agreement", together with all exhibits, as thereafter assigned, amended, restated or modified ("Land Loan Agreement"); two Promissory Notes ("Land Loan Note"), originally dated as of September 27, 2005 and as of

December 2, 2005 in the original principal amount of $5,000,000, as it may have been amended or modified; the Deeds of Trust on the Property, the collateral assignment and amendments thereto; and the UCC Financing Statements and amendments thereto. The foregoing documents, among others and those related to them, are collectively referred to as the "Land Loan Documents."

5. In addition, certain of the Debtors, Textron Financial and Concord have entered into a Servicing Agreement and LockBox Agreement (collectively, "Servicing Agreements").

6. All of the documents executed in connection with the Receivables Loan, the Construction Loan, the Land Loan, and the Lock Box Agreement are collectively referred to as the "Textron Loan Documents."

7. Textron Financial is the owner of the Receivables Note, the Construction Note and the Land Loan Note, and to hold the beneficial and other interests under the Textron Loan Documents which Textron Financial asserts gives Textron Financial (among other things) valid, properly perfected, first priority liens against, and/or direct assignment of, the Property.

8. Textron Financial is owed as of July 29, 2009 principal and accruing interest for each of the loans is as follows: (i) $11,774,807.19 in principal and $431,333.75 in accrued interest through July 29, 2009 on the Receivables Loan; (ii) $11,065,686.71 in principal and $737,712 in accrued interest through July 29, 2009 on the Construction Loan; (iii) $4,577,873.77 in principal and $349,444.34 in accrued interest through July 29, 2009 on the Land Loan, plus all accruing interest, attorneys fees and costs incurred by Textron Financial (the "Debt").

9. Textron Financial asserts that as of July 29, 2009, the accruing interest under the Textron Loan Documents was $1,518,524.33.

10. In its schedules filed in this matter (the "Schedules"), Debtors listed the principal amount of the Loans as follows: (i) the Receivables Loan as approximately

$12,038,414; (ii) the Construction Loan as approximately $11,065,687; and (iii) the Land Loan as approximately $4,577,706.

11. Textron Financial alleges that included in Debtors' Debt to Textron Financial is unpaid accrued post-petition interest of $1,199,514.40 (the "Unpaid Accrued Post Petition Interest").

12. Debtors contend that unpaid post-petition interest is approximately $728,163 and that Textron Financial is only entitled to post-petition interest to the extent that it is over-secured. Debtors contend that Textron Financial is over-secured and that a significant equity cushion exists to protect Textron Financial.

13. Textron Financial claims that the Property has value, and post petition, has generated income, rents, profits and proceeds, revenues, fees, charges, accounts or other payments for the use or occupancy of the Property, from the collections of the consumer notes, and from sales of timeshare units (collectively, "Textron Financial's Cash Collateral").

14. Textron Financial and Debtors have stipulated on several occasions to the use of Textron Financial's Cash Collateral pursuant to certain conditions and terms and the Budgets (the "Cash Collateral Orders"). Pursuant to the Cash Collateral Orders, Debtors have used Textron Financial's Cash Collateral for its operations of the resorts, sales and marketing expenses, corporate overhead, and certain professional fees and administrative expenses.

15. Pursuant to the Court's Cash Collateral Orders, Textron Financial was granted Adequate Protection Liens in all of the assets and property acquired by Debtors post petition, the cash reserve deposit with the merchant banker, and a second position lien in three acres of real property located in Sedona, Arizona (junior to M&I's first position lien of approximately $290,000).

## IV. DEBTORS' ADDITIONAL DISPUTED FACTS

1. The Company was founded in 1986 and commenced implementation of its current operating and growth strategies in the fourth quarter of 1991. During the period

2255712.1/26948.001 8

from December 31, 1991 through December 31, 2008, the Company increased the number of ILX Resorts from two to ten (excluding the Roundhouse Resort, the Carriage House, Scottsdale Camelback Resort and Los Abrigados Lodge), and increased its total inventory of sold and unsold Vacation Ownership Interests from 9,915 weeks to 33,292 weeks (including the Sea of Cortez Premiere Vacation Club, the Roundhouse Resort, the Carriage House, the Scottsdale Camelback Resort Vacation Ownership Interests and 19 additional Vacation Ownership Interests). The Company's total revenues, excluding estimated uncollectible revenue, increased from $6.1 million in 1991 to $42.8 million in 2008.

2. In terms of cash management, the ILX Main Operating Account receives all revenues from all other accounts of the ILX Entities, and also makes all payments or funds those accounts so that they may make payments. The ILX Entities have operated with this cash-management system for an extended period prior to the bankruptcy petitions, and seek to continue operating in this manner post-petition.

3. As of December 31, 2008, the ILX Resorts represented an aggregate of 630 units and 33,273 sold and unsold one-week Vacation Ownership Interests. The 630 units include 39 units at the Los Abrigados Lodge which was operated under a long-term lease that was rejected as part of the Chapter 11 proceedings. The 33,273 sold and unsold Vacation Ownership Interests exclude the Los Abrigados Lodge.

V. **DISPUTED ISSUES OF FACT AND LAW**

1. Is the Debtors' Plan feasible?
2. Does the Debtors' Plan provide adequate means of implementation?
3. Is the Debtors' Plan proposed in good faith?
4. Is the Debtors' Plan in the best interests of creditors?
5. Does the Debtor's Plan discriminate unfairly?
6. Is the Debtors' Plan fair and equitable?
7. Are the interest rates and other loan structures or modifications proposed in the Debtors' Plan appropriate in relation to the market, and in relation to the pre-petition rates charged by Textron Financial?

8. Is Textron Financial receiving the indubitable equivalent of its claim in Debtors' Plan?

9. Do the Debtors have equity in Textron Financial's collateral?

10. Is the Debtors' property which serves as collateral for Textron Financial's debt necessary for an effective reorganization?

11. Is the interest of Textron Financial adequately protected?

12. Does cause exist to grant the Stay Relief Motion?

13. Does the Plan satisfy all the requirements of Section 1129(a) and 1129(b)?

14. Will Textron Financial receive under the Plan, as of the effective date of the Plan, not less than the amount that Textron Financial would receive or retain if the Debtors were liquidated under Chapter 7 of this Bankruptcy Code?

15. Does Textron Financial receive under the Plan deferred cash payments totaling at least the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property?

16. Does the Debtors' Plan improperly classify similarly situated creditors under Section 1122 without a proper business justification?

17. Does the Debtors' Plan result in substantive consolidation of all the Debtors and is it proper?

18. Does the Debtors' Plan violate the absolute priority rule?

19. Does the Debtors' Plan ignore the *LaSalle* requirements?

V. **LIST OF WITNESSES**

A. DEBTORS' WITNESSES

1. Jim Ameduri
2. (Intentionally Left Blank)
3. Margaret Eardley
4. (Intentionally Left Blank)
5. Joe Martori

|     |    | 6. | (Intentionally Left Blank) |
|-----|----|----|----|
|     |    | 7. | Rick Sargent |
|     |    | 8. | Jerry Sikes |
|     |    | 9. | Nancy Stone |
|     | B. | TEXTRON FINANCIAL'S WITNESSES | |
|     |    | 1. | Ed McDonough |
|     |    | 2. | Mark Rubin |
|     |    | 3. | Kyle Shonak |
|     |    | 4. | David Wisen |
|     |    | 5. | Peter Walsh |
|     |    | 6. | Josh Allison |
|     |    | 7. | David Palmer |
|     | C. | **WITNESS DECLARATIONS** | |
|     |    | **1.** | **Debtors' Declarations** |
|     |    |    | Rick Sargent, Jerry Sykes, Jim Ameduri |
|     |    | **2.** | **Textron Financial Declarations** |

Textron Financial offers the following witness declarations as evidence at the Hearing:

(a) Declaration of David Wisen, and all exhibits thereto, to be filed in this case

(b). Declaration of Kyle Shonak, and all exhibits thereto, to be filed in this case

(c) Declaration of Ed McDonough, and all exhibits thereto, to be filed in this case

(d) Declaration of Mark Rubin, and all exhibits thereto, to be filed in this case

(e) Declaration of Peter Walsh, and all exhibits thereto, to be filed in this case

(f) Declaration of Josh Allison, and all exhibits thereto, to be filed in this case

(g) Declaration of David Palmer, and all exhibits thereto, to be filed in this case

## VI. LIST OF EXHIBITS

The Parties have identified and exchanged copies of the following exhibits to be introduced at the Hearing. All Parties reserve all objections to the various exhibits listed

below, including, but not limited to, objections based on hearsay, lack of foundation, and relevancy:

A. **Debtors' Exhibits**

1. LandAmerica Valuation Corporation Self-Contained Appraisal of 17 Acres Vacant Land - 250 Brewer Road, Sedona, Arizona 86336, dated March 24, 2009

2. Martori & Company Limited Appraisal in a Summary Format of the Non-Sedona Vacation Club Assets which are part of the Los Abrigados Resort and Spa situated in Sedona, Arizona, dated September 23, 2005

3. Romney & Associates, Inc. Summary Report of A Complete Appraisal of Varsity Clubs of America – Tucson Chapter, dated March 18, 2004

4. Romney & Associates, Inc. Self-Contained Report of A Complete Appraisal of Premiere Vacation Club at the Roundhouse Resort dated April 27, 2004

5. Romney & Associates, Inc. Complete Summary Appraisal of Varsity Clubs of America – South Bend Chapter, dated August 14, 2006

6. Romney & Associates, Inc. Summary Report of A Complete Appraisal of Carriage House- Premiere Vacation Club, dated July 7, 2003

7. March 2009 Business and Industry Monthly Operating Reports

8. April 2009 Business and Industry Monthly Operating Reports

9. May 2009 Business and Industry Monthly Operating Reports

10. June 2009 Business and Industry Monthly Operating Reports

11. July 2009 Business and Industry Monthly Operating Reports

12. August 2009 Business and Industry Monthly Operating Reports

13. September 2009 Business and Industry Monthly Operating Reports

14. Audited Balance Sheet and Income Statement summarizing the Debtors' assets, liabilities, and financial situations as of December 31, 2008, and a projected balance sheet summarizing the Debtors' assets and liabilities as of December 31, 2009

15. Debtors' business projections through 2014

16. Schedule of sources and uses which provides relevant information regarding the expenses associated with the confirmation of the Debtors' Plan, and the sources of cash from which such expenses will be paid

17. List of executory contracts and unexpired leases Debtors have not rejected.

18. Customer testimonials.

19. Articles about timeshare industry

20. Sedona Chamber of Commerce (Tourism- non-renewals)

21. Graph showing aggregate projected payments to Textron upon sale of vacation ownership interests for plan years 2 and 3.

22. Sales process flow chart

23. Diamond Resorts § 363 purchase offer – October 23, 2009

24. Financial information showing increase in Textron's collateral since the petition date.

25. ILX Resorts Incorporated 5 year financial performance.

26. Wyndham World NYSE Article dated August 14, 2009

27. Graph showing Textron inventory and receivable collateral in excess of indebtedness for Plan years 1- 3.

28. Graph showing proportion of Textron Collateral that is inventory and notes receivable.

29. Graph showing inventory and receivables collateral versus Textron's indebtedness.

30. Graph showing cash inflows that are not Textron's collateral.

31. ILX Resorts Incorporated draft 10Q, set to be filed with the SEC shortly.

32. Graph showing actual performance vs. cash collateral budget.

33. Graph showing actual performance vs. projected sales of Vacation Ownership Interests.

34. Graph showing sales and marketing expense as a percentage of VOI sales

35. Graph showing net income/(loss) before reorganization expenses for March through September of 2009.

36. Textron Inc. Quarterly Report (10Q) for period ended October 3, 2009

37. Chart showing detail of note portfolio sales conducted between July of 2005 and June of 2008.

38. Interim Order Authorizing the Debtors' To Use Cash Collateral (March 10, 2009).

39. Final Order Authorizing Debtors' Continued Use of Cash Collateral (March 26, 2009).

40. Second Stipulated Order authorizing Debtors-In-Possession's Use of Cash Collateral (July 9, 2009).

41. Order Authorizing Debtors' Continued Use of Cash Collateral (August 4, 2009).

42. Order Authorizing Debtors' Continued Use of Cash Collateral (September 3, 2009).

43. Stipulated Order Authorizing Debtors' Continued Use of Cash Collateral (September 30, 2009).

44. Stipulated Order Authorizing Debtors' Continued Use of Cash Collateral (filed 10/28/09).

45. Declaration of Nancy J. Stone, dated July 29, 2009, filed at Docket # 202

46. Declaration of Margaret M. Eardley, dated July 30, 2009, filed at Docket # 201.

47. Documents listed by Textron.

48. Certain Pictures of the various ILX facilities.

B. **Textron Financial's Exhibits**

1. Debtors' Monthly Operating Reports and the attachments thereto

2. Debtors' Schedule of Assets & Liabilities, and Statement of Financial Affairs

3. All of the Receivables Loan Documents, including but not limited to all documents filed with the Stay Relief Motion, and including but not limited to the Notes, Loan and Security Agreements, UCC Financial Statements, Collateral Assignments, and all amendments thereto,

4. All of the Construction Loan Documents, including but not limited to all documents filed with the Stay Relief Motion, and including but not limited to the Notes, Loan and Security Agreements, Deeds of Trust, Assignment of Rents, Security Agreements and Fixture Filings, Assignment documents, UCC Financing Statements, and all amendments thereto, various Deeds to PVC, related PVC Deeds of Trust and documents re annexations into PVC

5. All of the Land Loan Documents, including but not limited to all documents filed with the Stay Relief Motion, and including but not limited to the Notes, Loan and Security Agreement, Collateral Assignments, Deeds of Trust, UCC Financing Statements, and all amendments thereto

6. Diamond Resorts Offer Term Sheets and all modifications thereto and/or revised versions thereof

7. Debtors' Plan and any and all amendments and exhibits thereto

8. Debtors' Disclosure Statement and any and all amendments and exhibits thereto

9. ILX Form 10-K for the year ending December 31, 2007

10. ILX Form 10-K for the year ending December 31, 2008

11. ILX Form 10-Q for the quarter ending June 30, 2009

12. ILX Form 10-Q for the quarter ending September 30, 2009

13. Declaration of Peter Walsh, and all exhibits thereto

14. Declaration of Mark Rubin, and exhibits thereto

15. Declaration of Josh Allison, and exhibits thereto

16. Declaration of Kyle Shonak, and exhibits thereto

17. Declaration of Ed McDonough, and exhibits thereto

| | |
|---|---|
| 18. | Declaration of David Wisen, and exhibits thereto |
| 19. | Declaration of David Palmer, and exhibits thereto |
| 20. | Report prepared by Mark Rubin dated November 6, 2009 |
| 21. | Report prepared by Josh Allison dated November 2009 |
| 22. | Report prepared by Ed McDonough dated November 2009 |
| 23. | Report prepared by Peter Walsh dated November 2009 |
| 24. | Proof of Claim for Resort Funding, LLC |
| 25. | All appraisals prepared concerning the property which concerns the Land Loan |
| 26. | Current Product Offering and Pricing |
| 27. | Reports: 2008 and 2009 Sales and Marketing Revenue and Expenses by Sales Center |
| 28. | Reports: 2008 and 2009 Sales by Product Sold |
| 29. | Reports: 2008 Tours and Marketing Expenses |
| 30. | Reports: 2009 Tours and Marketing Expenses |
| 31. | Resort Operation Information |
| 32. | Portfolio Analysis Report |
| 33. | Reports: Active Portfolio |
| 34. | Receivable and Resort Mortgage |
| 35. | Executed land loan extension letter issued 12/24/2008 |
| 36. | Signed extension letter granting extension through 01/31/2009 |
| 37. | Martori letter to DW dated 01/15/2009 |
| 38. | Extension letter issued 01/23/2009 |
| 39. | Executed extension letter received 01/27/2009 and grants extension through 02/28/2009 |
| 40. | All Documents Reviewed by Mark Rubin: |
| 41. | All Documents Reviewed by Ed McDonough: |
| 42. | All Documents Reviewed by Josh Allison |

43. All Documents Reviewed by Peter Walsh

44. Any and all Documents Relating to or evidencing Textron Financial's Proof of Claim, including, but not limited to those documents identified in the Court's Docket Nos. 223, 224, 225, 226, and 227.

45. Declaration of Nancy J. Stone, dated July 29, 2009, filed at Docket # 202

46. Declaration of Margaret M. Eardley, dated July 29, 2009, filed at Docket # 201

47. Declarations of Jim Ameduri, July 14 and 30, 2009, filed at Docket #179, 200

48. Declaration of Joe Martori, July 8, 2009, filed at Docket # 174

49. [INTENTIONALLY LEFT BLANK]

50. All exhibits listed by Debtors.

51. Additional documents produced by or to Debtors

52. All impeachment exhibits

## VII. ESTIMATE OF LENGTH OF TRIAL

Debtors estimate two days.

## VIII. IRWIN UNION'S OBJECTION TO STAY RELIEF MOTION

Textron Financial and Irwin Union agree that the relative extent and priority of either parties' security interests and liens as to the Varsity Clubs of America-South Bend Varsity Clubs of America Chapter in South Bend, Indiana is not at issue in this evidentiary proceeding and both parties reserve all issues and arguments between themselves and do not intend that the Court rule on such issues.

**DEBTORS DO NOT BELIEVE THIS PLEADING AFFECTS THE INTERESTS OF THE TIMESHARE OWNERS, AND THEREFORE DO NOT INTEND TO SERVE THEM WITH NOTICE OF THIS PLEADING.**

DATED November 9, 2009.

POLSINELLI SHUGHART PC

By: /S/ John J. Hebert
John J. Hebert

| | |
|---|---|
| | Mark W. Roth<br>Philip R. Rudd<br>Arturo A. Thompson<br>Wesley D. Ray<br>Security Title Plaza<br>3636 N. Central Ave., Suite 1200<br>Phoenix, AZ 85012<br>Attorneys for the Debtors<br><br>FENNEMORE CRAIG, PC<br><br>By /S/ Keith L. Hendricks<br>   Cathy Reece<br>   Keith Hendricks<br>   3003 N. Central Ave., Suite 2600<br>   Phoenix, AZ 85012<br>Attorneys for Textron Financial Corporation |
| **COPY** of the foregoing served via U. S. First Class mail, or served via electronic notification if indicated by an "*" on November 9, 2009, to: | |

| | |
|---|---|
| U.S. TRUSTEE'S OFFICE<br>230 North 1st Avenue, Suite 204<br>Phoenix, AZ 85003<br><br>Sarah Moyed<br>U.S. SECURITIES AND<br>   EXCHANGE COMMISSION<br>5670 Wilshire Blvd., Suite 1100<br>Los Angeles, CA 90036-5679 | Gilbert L. Hamberg<br>1038 Darby Drive<br>Yardley, Pennsylvania 19067-4519<br>*Attorneys for TUCSON ELECTRIC POWER COMPANY AND UNS GAS, INC.* |
| James Kneller * jim@jimknellerlaw.com<br>LAW OFFICES OF JAMES KNELLER, PC<br>6750 East Camelback Road, Suite 101<br>Scottsdale, AZ 85251<br>*Attorneys for Tucson ELECTRIC POWER Company and Arizona Public Service* | |
| Richard H. Herold, Jr. *<br>rherold@hinshawlaw.com<br>HINSHAW & CULBERTSON LLP<br>3200 N. Central Ave., Suite 800<br>Phoenix, AZ 85012-2428<br>*Attorneys for IRWIN UNION BANK, FSB* | Scott B. Cohen * sbc@engelmanberger.com<br>ENGELMAN BERGER P.C.<br>3636 N. Central Avenue<br>Security Title Plaza, Suite 700<br>Phoenix, AZ 85012-1936<br>*Attorneys for ARIZONA BANK & TRUST* |

| | | |
|---|---|---|
| 1 | Don C. Fletcher * dfletcher@lakeandcobb.com<br>LAKE & COBB, P.L.C.<br>1095 W. Rio Salado Pkwy., Suite 206<br>Tempe, Arizona 85281<br>*Attorneys for HUGH E. GREEN AND LINDA G. SILFVEN* | Donald F. Ennis* dfennis@swlaw.com<br>SNELL & WILMER, L.L.P.<br>400 E. Van Buren<br>Phoenix, AZ 85004<br>*Attorneys for CONCORD SERVICING CORPORATION* |
| 5<br>6<br>7<br>8 | Frank F. McGinn *<br>ffm@bostonbusinesslaw.com<br>BARTLETT HACKETT FEINBERG P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110<br>*Attorneys for Iron Mountain Information Management, Inc.* | Paul M. Weiser * pweiser@buchalter.com<br>BUCHALTER NEMER<br>16435 N. Scottsdale Road, Suite 440<br>Scottsdale, AZ 85254-1754<br>*Attorneys for TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA* |
| 9<br>10<br>11<br>12<br>13 | Howard C. Meyers *<br>hmeyers@bcattorneys.com<br>BURCH & CRACCHIOLO, P.A.<br>702 E. Osborn Road, Suite 200<br>Phoenix, AZ 85011-6882<br>*Attorneys for THE STEELE FOUNDATION* | Ethan B. Minkin *<br>ethan.minkin@kutakrock.com<br>KUTAK ROCK LLP<br>8601 N. Scottsdale Road, Suite 300<br>Scottsdale, AZ 85253-2742<br>*Attorneys for U.S. BANK NATIONAL ASSOCIATION* |
| 14<br>15<br>16<br>17 | Larry K. Udall * ludall@cgsuslaw.com<br>CURTIS GOODWIN SULLIVAN<br>   UDALL & SCHWAB, PLC<br>501 E. Thomas Road<br>Phoenix, AZ 85012-3205<br>*Attorneys for NAVOPACHE ELECTRIC COOP.* | Thomas G. Luikens *<br>thomas.luikens@azbar.org<br>AYERS & BROWN, P.C.<br>4227 N. 32nd Street, First Floor<br>Phoenix, AZ 85018<br>*Interested Party* |
| 18<br>19<br>20<br>21 | Andrew Abraham *<br>aabraham@bcattorneys.com<br>Burch & Cracchiolo, P.A.<br>P. O. Box 16882<br>Phoenix, AZ 85011-6882<br>*Attorneys for THE STEELE FOUNDATION, INC* | Kelly Singer * ksinger@ssd.com<br>Bradley A. Cosman * bcosman@ssd.com<br>SQUIRE SANDERS & DEMPSEY LLP<br>Two Renaissance Square<br>40 N. Central Ave., Suite 2700<br>Phoenix, AZ 85004-4498<br>*ATTORNEYS FOR RESORT FUNDING, LLC* |
| 22<br>23<br>24<br>25<br>26 | Robert J. Miller * rjmiller@bryancave.com<br>Edward M. Zachary *<br>edward.zachary@bryancave.com<br>BRYAN CAVE, LLP<br>Two N. Central Avenue, Suite 2200<br>Phoenix, AZ 85004-4406<br>*Attorneys for M&I MARSHALL & ILSLEY BANK* | Terry A. Dake * tdake@cox.net<br>TERRY A. DAKE, LTD.<br>11811 N. Tatum Boulevard, Suite 3031<br>Phoenix, AZ 85028-1621<br>*Attorneys for Dale D. Ulrich, Chapter 7 Trustee of Bankruptcy Estate of Craig R. Roetman* |
| 27<br>28 | Brenda K. Martin * bmartin@omlaw.com<br>Jason J. Romero * jromero@omlaw.com<br>OSBORN MALEDON, P.A. | Jack Barker * jpb@bhhhlaw.com<br>BARKER HIGGINS HITCHCOCK & HESSE,<br>PLLC |

| | |
|---|---|
| 2929 North Central Avenue, Suite 2100<br>Phoenix, AZ 85012-9346<br>*Attorneys for Concast Corporation* | 1630 East White Mountain Boulevard,<br>Suite B<br>Pinetop, AZ 85935<br>*Attorneys for Ponderosa Domestic Water Improvement District* |
| Terri A. Roberts<br>German Yusufov<br>Deputy County Attorneys<br>Civil Division<br>PIMA COUNTY ATTORNEY'S OFFICE<br>32 North Stone Avenue, Suite 2100<br>Tucson, AZ 85701<br>*Attorneys for Pima County* | |

By: /s/ *L. Carol Smith*